## HALL v. AHREND.

### (Circuit Court of Appeals, Second Circuit. March 10, 1902.)

### No. 99.

PATENTS—INVENTION—PROCESS FOR MAKING IMITATION PRESS-COPIED LETTERS.
The Hall patent No. 423,558, for a method of producing imitation press-copied letters, claim 1, is void; the process described for treating printed letters or circulars to give them the appearance of having been press-copied being essentially the same to which letters are subjected in the actual copying, which was old.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Alan D. Kenyon, for appellant.
R. B. McMaster, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, District Judge. This cause comes here upon appeal of complainant in the court below from a judgment dismissing the bill alleging infringement of complainant's patent No. 423,558, granted March 18, 1890, to Samuel Hall. The patent is for a process whereby the blurred appearance of press-copied letters may be imparted to printed circulars in great numbers, in rapid succession, and in practically unlimited numbers. The idea was novel; the result was commercially successful.

The first claim, the only one in suit, is as follows:

"(1) The process described, consisting in first printing the original sheets, then placing their printed surfaces in contact with a moist material and passing both together between compression rollers, then removing the ink impression received by the moist material before it is again brought in contact with the printed matter, substantially as and for the purposes set forth."

The process thus claimed consists, as stated by the patentee, in (1) printing the circulars in the ordinary way; (2) placing them face downward on an endless belt of moist material; (3) compressing them together by means of rollers; (4) washing out the ink thus impressed on the moist material; (5) using the moist material over again for the same purpose. The apparatus by which the process is carried out comprises a web, two tanks, one containing water, the other bleaching fluid, and rollers. The web passes under one of the rollers submerged in the water tank, and, thus moistened, passes upward between two adjustable squeezing rollers, which regulate the amount of moisture. The circulars are then placed face downward on the moist web, and are carried thereon between another pair of rollers, "and thus an imprint is taken on the web from the ink on the paper." The circulars then drop off or are removed, and the web passes down into the tank of bleaching fluid, where the ink is destroyed, and then under a roller and between another pair of squeezing rollers, which squeeze out the excess of bleaching fluid, and then over another roller into the water tank, where the bleaching fluid is washed out, leaving the web moist for another printing operation. The patentee, however, expressly disclaims this apparatus, and in the claim in suit does not claim the bleaching fluid, and neither complainant nor defendant uses bleaching fluid in carrying out the alleged process.

If it be assumed that the method employed in this operation of a machine may constitute a true process when no bleaching fluid is used, the question is raised whether such process involved invention in view of the prior art. Letter-copying machines with water troughs, and operated by means of rollers or platens, were old, as shown by the Bailey, Lash, Stiles, and Cope patents. In these presses a process was employed by which copying paper was dampened, and this "moist material" and the printed surface of a letter were passed together between rollers or under a platen, and in some cases the ink was afterwards washed from the rollers. The complainant attempts to differentiate these processes from that claimed in the patent in suit by the contention that the old processes were used to print a copy of the let-

ter on a sheet of interposed paper, but that by the use of the patented process, while a press-copy effect is given to the circular, no real copy of the circular is printed, but only a stain of free ink is imparted to the web, which stain is removed.

But the patentee, describing the operation of his process, says: "Thus an imprint is taken on the web from the ink on the paper." Complainant's expert admits that "the first letter as it is fed through the compression rollers on to the endless belt would be found to contain almost a perfect copy of the letter," and counsel for complainant admits: "In actual practice the printed circular or letter leaves a substantial amount of ink on the moist material; in fact, a complete copy is usually imprinted on the moist material."

The contentions in support of novelty are disposed of by prior patents, notably patent No. 289,983, granted to Ezra Cope in 1883, for a copying press. The chief difference between the patented process and that carried on by means of the Cope patent is in the use by Cope of a platen with his rollers. He uses an endless web of moist material, which, with the letter or circular, is subjected to pressure under the platen. The web passes between rollers into a tank of liquid, which moistens the web, and may serve to wash out the stains of ink. It is true that a sheet of copying paper was interposed between the latter and the web, but this was done only in order to preserve the copy, while in the patented process the copy made directly on the web is destroyed. In each case the ink passing from the letter or circular may afterwards be washed out.

Although the moist material used by the patentee is a cloth web, he does not claim it, but describes the web as made "of cloth or other suitable material," just as Stiles had done in his copying apparatus, patent No. 343,505. And the experts for complainant admit that the process of the patent might be practiced to a limited extent by the use of "moist material," consisting of the dampened paper of copying presses, or by employing the rubber rolls of an ordinary clothes wringer. The old and new processes are the same; in one case the copy is preserved, in the other it is destroyed.

The objection to the Cope apparatus that it could not be speedily operated is met by the proof that the substitution for the platen of the rollers shown in other presses of the prior art would not involve invention, and by the fact that the apparatus by which such speed is accomplished is not covered by the patent. Three-quarters of the Hall specification is devoted to the description of a letter-press copying apparatus of unlimited capacity, designed for speedy and continuous operation, of which he says: "I do not herein claim the apparatus shown and described, * * * since I intend to make that the subject of an application for a patent." His first claim is broad enough to include the old-fashioned letter-press copying system, and therefore cannot be sustained.

The decree is affirmed, with costs.